PENDLETON, President,
delivered the resolution of the Court, as follows:
This is an appeal from the decree of the Court of Chancery, where Mr. Duval exhibited his bill, stating that, on the 23d of April, 1793, he, as security for Mr. Alexander Campbell, entered into three bonds to Mr. Croughton, for 113?. 4s. 4d. each; one payable in October, 1793, another in January, 1794, and the third in April, 1794, all bearing interest from October, 1790. That, Mr. Campbell’s circumstances being in a declining state, Duval, in October, 1794, when all the bonds had become due, applied to Croughton, who. well knew Campbell’s circumstances, and requested him to bring suits on the bonds, *63 which lie declined doing, till after Mr. Campbell’s death, insolvent, in 1796; his inducement for which forbearance, was Campbell’s being his counsel in an important suit then depending, and his expectation that Campbell would be able to pay him from the fruits of a suit, then depending m this Court. That., after Campbell’s death, Duval again applied to Croughum to administer on his estate, by which the debts might have been secured; but he refused to do so; and Duval not being a creditor, could not obtain such administration. That, in 1798, he received a letter, from the appellant Sovthcomb, intimating his claim to the bonds; which he answered, assigning reasons against his liability. Crnnghton and Southcomb are made defendants, and required to answer the bill; and the prayer is, that the bonds may he cancelled so far as respects the plaintiff, or that other relief may he afforded. The proofs fix the request to sue in 1794, but go no further. It is not proved that any new arrangements are made between the creditor and the principal, to obtain a forbearance of the suits; for, although it is stated that Campbell expected to pay from the effect of a suit depending, it does not appear that Croughion had bound himself to wait till the event of that suit. It is, therefore, a naked case for the question, whether a creditor, by delaying to commence suit, when requested by a surety, without any thing done on his part, which may amount to a new contract with the principal, shall lose his remedy against the surety ? The question is new, and, indeed, important; as there may, perhaps, he hundreds of bonds, dated prior to the act of [Dec.] 1794, [ — Mar. 1795, R. C. c. 116, § 6, ed. 1819,] existing in the State, and probably not one of them in which the creditor has not forborne to sue for a considerable time beyond the day of payment; which, it is urged, will amount to a discharge of the surety. It would, indeed, be much more important, if that act of 1794 had not settled the question from that period. The act does not take away any remedy which the surety was entitled to before; and we come to consider what that remedy was ? It is clear, that the plaintiff might have paid the money, and proceeded to a suit himself, or if that was inconvenient, he might have brought his bill of quia timet, to have compelled the principal to pay, and the creditor to receive the money; but, that the creditor should lose his debt, because he was merely passive, in forbearing a suit which the surety requested him to bring, without any thing active between him and the *64 principal, tending to shew a new contract for forbearance, is not, and the Court believe cannot be, proved by any of the cases produced, or existing. In the case quoted, from 2 Bro. C. C. 579, the creditor commenced suit, and upon the principal giving a note to confess judgment, agreed to stay execution for three years; which the Chancellor considered as a new contract, and compromise with the principal, without the consent of the surety, and which deprived him of his remedy by the bill of quia timet; and, therefore, that the surety was discharged. In the case in 2 Ves. jun. 540, the creditor took from the principal several notes and drafts, which were returned, and new ones given, from time to time, which amounted to a new contract, and all this without consulting the surety, who had this further equity in that case; that while those notes were transacting, considering himself as discharged, he had paid over to the principal, more money than the. amount of the debt, which had come to the surety’s hands, and the Chancellor adjudged that that surety was discharged. The circumstances, discussed in those cases, so far from proving that the surety is discharged by a bare request to sue, not complied with, tend to establish the contrary, that such request and a bare forbearance to sue, does not amount to a discharge. Sureties are so far favored in equity, that the Court will never extend relief against them, further than, by their contract, they are bound at law; but fair creditors are also favorites in that Court, and will not be deprived of their legal rights, without some fraud, or neglect in doing what they were bound to do. It was certainly unkind in Croughton, not to sue when he was requested by the surety, which was so far a breach of his moral duty, but it was truly said, that this duty was such as the Civilians describe as an imperfect obligation, the performance of which was merely voluntary, and could not be enforced by a Court of Justice; many instances of which were mentioned, and many more might have been added. The parties here had plain remedies: the creditor to sue, if he chose it; and, as he did not, Mr. Duval’s remedy is before pointed out; which he, neglecting to pursue, was, at least, as much in fault as the creditor; and where equity is equal, the law must prevail. The decree is, therefore, to be -reversed, with costs, by the unanimous opinion of the Court; and, in consequence of Mr. Duval’s consent, entered in the record, he is decreed to pay the several sums according to the bonds. The costs in that Court to lie equally borne by *65 the parties, as it seems to have been by con,sent, to settle a now point. *

[* See Hill v. Bull, Gilmer, 149; Ward v. Johnson, 6 Munf. 6; Hunt v. The United States, 1 Gallison, 32; King v. Baldwin et al. 2 Johns. Ch. R. 559, 17 Johns. R. 384; Cope v. Smith et al. 8 Serg. & Raw. 110 and the recent case of Norris v. Crummey et al. 2 Rand. 323, in which, the principal cases are reviewed by Green J. p. 333-338.
Lord Ch. Eldon said in Samuell v. Howarth, (Aug. 7th, 1817) 3 Meriv. 277-8, "it is iirmly established, that the same principles which have been hold to discharge the surety in Equity, will operate to discharge him at law." See, however, the case of Davey et al. v. Pendergrass, M. T. 1821, K. B. 5 Barn. & Ald. 187. 2 Chilly's R. 336, S. C., where this subject is fully (considered. The point adjudicated, was, that it is not any defence at law, to an action on a bond, against a surety, that by a parol agreement, time has; been given to the principal.
Abbott, C. J. said, "the ground of my opinion in this case is. that general rule of the common law, which requires, that the obligation created by an instrument under seal, shall be discharged by fore» of an instrument of equal validity, The operation of this rule is. indeed, sometimes such, as to make it imperative upon a Court of equity to interpose and grant relief; but it by no means follows'that the rule of law is to be broken down, because a Court having jurisdiction of another kind, will interpose where there is a particular case, in which the rule of lav may be found to operate harshly. There is great objection to a Court of Law talcing upon itself to act as a Court of Equity, because they have not the means of doing that full and ample justice which the particular case may require. * We ought not, therefore, to interpose in a matter which seems peculiarly to belong to the jurisdiction of a Court of Equity. Jf a parol agreement is entered into to give time to the parties, supposing it not the case of a surety, but simply the case of a common bond, conditioned for payment of money at a et*rfain day. it will not prevent the party from proceeding at Law immediately, whatever the consideration for the delay may be. And, if that be so, how can the giving of time to a third person, by such an agreement, prevent the obligee of the bond from proceeding at Law against the surety ? There may, indeed be such a consideration for the agreement, as may induce a Court of Equity to direct that the party shall not proceed to enforce his remedy at Law. But a parol agree" moot of this nature, can never operate to control the obligation of this bond in a Court of Law. The decisions which have taken place in the Courts of Equity in eases of this nature, have always, as I understand them, proceeded on the notion, that at Law, the thing prayed for could not he done» Bills of Exchange stand upon a very different footing; there the law merchant operates, and the Courts of Law decide upon them with reference to that law. Guaranties for the payment of debts, [Samuell v. Howarth, was a ease of guaranty,] are not, in general, instruments tinder seal, and there is no strict technical rule which,- as to them, prevents a Court of Law from looking to the real justice of the case.” Holroyt and Best, Just, to same effect.
And Bultell v. Jarrold, (not reported.) cited by Mr. Maule, in Davey et al. v. Pendergrass, and relied on by the Court, which was an action of debt on a recognizance of bail $ the defence pleaded was, time given to the principal, to which there was a demurrer ; the Court (of Exchequer) gave judgment for the plaintiff, on the ground, that this could only be taken advantage of by an application to the equitable jurisdiction of the Court § and of this opinion, was the House of Lords. See the cases cited in the preceding part of this note/)